# In the United States Bankruptcy Court
## for the
## Southern District of Georgia
### Statesboro Division

In the matter of: )
)
ROSS E. TAYLOR, )
(Chapter 7 Case Number 11-60587) )
)
    *Debtor.* )
)
_____ )
)
DONALD F. WALTON, )
UNITED STATES TRUSTEE, )
REGION 21, )
)
    *Plaintiff,* )
)
v. )
)
ROSS E. TAYLOR, )
)
    *Defendant.* )
_____ )

Adversary Proceeding

Number 12-06021

**FILED**
Lucinda B. Rauback, Clerk
United States Bankruptcy Court
Savannah, Georgia
By dreese at 6:21 pm, Mar 31, 2014

## OPINION AND ORDER

In this adversary proceeding, the Complaint Objecting to Discharge (A.P. dckt. 1), the United States Trustee for Region 21 ("U.S. Trustee") seeks to revoke the debtor/defendant's chapter 7 discharge pursuant to § 727.[1] Defendant Ross E. Taylor ("Debtor"), through his Motion in Limine and Objections to Plaintiff's Exhibits ("Motion in

---

[1] For this Order, all statutory references will be to title 11 of the United States Code unless indicated otherwise.

⚓AO 72A
(Rev. 8/82)

Limine") (A.P. dckt. 20),[2] now moves to exclude the admission of certain documents and recordings that are expected to be tendered by the U.S. Trustee at the trial of this adversary proceeding. For the reasons set forth below, the Motion in Limine is DENIED in part and GRANTED in part.

## BACKGROUND

### A.   Procedural Background

Debtor and his former wife (Amy Taylor) filed a joint petition for chapter 11 bankruptcy protection in the Middle District of Florida on April 4, 2008 ("Florida case"). Compl., *In re Taylor*, No. 3:08-bk-01861-JAF (Bankr. M.D. Fla. Apr. 4, 2008), ECF No. 1.[3] Their case was dismissed on May 20, 2011, and Debtor did not receive a discharge. Order Granting Mot. to Dismiss Case, *id.* (Bankr. M.D. Fla. May 20, 2011), ECF No. 153.

In the main bankruptcy case underlying this adversary proceeding ("Georgia case"), Debtor filed an individual chapter 7 bankruptcy petition in the Southern District of Georgia on September 28, 2011, and Judge John S. Dalis granted Debtor a discharge on

---

[2] For this Order, citations to the main bankruptcy case, number 11-60587, will appear as "(dckt.)," and citations to this adversary proceeding, number 12-06021, will appear as "(A.P. dckt.)."

[3] The Court takes judicial notice of the *existence* of all filed documents in Debtor's current case and previous case which are referenced in this Order. *See* Fed. R. Evid. 201; *In re Henderson*, 197 B.R. 147, 156 (Bankr. N.D. Ala. 1996) (citations omitted) (noting that a court may take judicial notice of records and its own orders in a case before it, as well as of documents filed in another court); *see also In re Penny*, 243 B.R. 720, 723 n.2 (Bankr. W.D. Ark. 2000).

March 13, 2012. (Dckts. 1, 34.) Thereafter, the U.S. Trustee filed this adversary proceeding on September 17, 2012, seeking the revocation of Debtor's chapter 7 discharge under § 727(d)(1) of the Bankruptcy Code. (A.P. dckt. 1.)

Debtor filed the Motion in Limine on September 7, 2013. (A.P. dckt. 20.) On September 10, 2013, Judge Dalis recused himself for purposes of the Motion in Limine, and the motion was assigned to Judge Edward J. Coleman, III for hearing and consideration.[4] (Order of Recusal, A.P. dckt. 21.) The U.S. Trustee filed a response to Debtor's motion on September 23, 2013. (Pl.'s Resp. to Def.'s Mot. in Limine & Objections to Pl.'s Exs. ("Pl.'s Resp."), A.P. dckt. 27), and the Court held a hearing on the Motion in Limine on November 6, 2013.

---

[4] Judge Dalis's Order of Recusal invokes the provisions of 28 U.S.C. § 455 and the Code of Judicial Conduct, without further specificity. The main federal recusal statute provides in relevant part:

(a) Any justice, judge, or magistrate judge of the United States shall disqualify himself in any proceedings in which his impartiality might reasonably be questioned.

(b) He shall also disqualify himself in the following circumstances:
(1) Where he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding . . . .

28 U.S.C. § 455(a)–(b). Because Judge Dalis continues to handle all other aspects of this adversary proceeding other than the Motion in Limine, it is evident that none of the more specific grounds of recusal relating to financial interests, relationships with a party, or other disqualifying circumstances exist in this case.

B.     "The Convoluted Event"[5]

Although the parties disagree about some aspects of the Convoluted Event, which Judge Dalis, as the trier of fact, may resolve as necessary at trial, many of the material facts are not in dispute concerning the U.S. Trustee's § 727(d)(1) claim.[6] The crux of the parties' dispute appears to be twofold. First, whether or not Debtor lied about the receipt of a $79,770 check. Second, whether or not that allegation is even relevant to the issue of dischargeability in the Georgia case.

Debtor, his father, and his two brothers each held a quarter interest in 200 acres in Screven County, Georgia. Plaintiff alleges that the original purchase price was $400,000 (Pretrial Order, A.P. dckt. 17, ¶ 6.). In January 2008, Debtor quitclaimed his quarter interest in the 200 acres to his father (James Taylor) and one of his brothers (Lance Taylor) for no consideration. In December 2008, the 200 acres was sold for $725,000. While the Florida case was still pending, on December 12, 2008, Debtor endorsed a $79,770 check "from Debtor's father payable to Debtor." ( A.P. dckt. 17, ¶ 7.) The check was written on the account of Taylor & Son Construction, LLC and signed by Debtor's father, and the "For" section of the check contained the following notation: "Payment on Property in Screven Cty." (Joint Ex. for Trial 3.)

---

[5] In the Pretrial Order, Debtor refers to a series of transactions that disposed of the proceeds of a $79,770 check as "the Convoluted Event." (Pretrial Order, A.P. dckt. 17, ¶ 7.)

[6] Below, I will specify where an allegation is made by only one of the parties.

Debtor alleges that the following transactions subsequently occurred: (1) He returned $20,000 in cash to his father and received a $59,770 cashier's check; (2) That cashier's check was subsequently divided into more cashier's checks, which were made payable to Debtor's mother (Gail Taylor), another one of his brothers (James Taylor, Jr.), Lance Taylor, and Debtor's mortgage company, as well as to Debtor or Amy Taylor for $29,402.34; and (3) Amy Taylor endorsed the $29,402.34 cashier's check and exhausted that entire amount through various checks and cash withdrawals "over the next several weeks." (Dckt. 17, ¶ 7.)

At Debtor's § 341 Meeting of Creditors held in November 2011, Debtor was asked if he received any money from the sale of the 200 acres. Debtor responded: "No." (Dckt. 17, ¶¶ 6–7.)

The U.S. Trustee alleges that this testimony was false and caused the chapter 7 trustee to seek the avoidance of the transfer of Debtor's quarter interest in the 200 acres. Debtor received a discharge in the chapter 7 case on March 13, 2012. The U.S. Trustee alleges that: (1) Neither he nor the chapter 7 trustee learned that Debtor received $79,770 from the sale of the 200 acres until after Debtor received a discharge; (2) Debtor's discharge should be revoked because he made false oaths (*see* § 727(a)(4)(A)); and (3) Debtor's discharge should be revoked because Debtor failed to produce books and records relevant to his finances (*see* § 727(a)(3), (5)). (Dckt. 17, ¶ 6.)

In response, Debtor argues that: (1) He did not personally keep any of the funds involved in the Convoluted Event; (2) The alleged acts or omissions occurred in the Florida case and not in connection with the Georgia case, making them irrelevant to any dischargeability issues in this case; and (3) Debtor argues that he did not make the alleged misrepresentations knowingly and fraudulently. (Dckt. 17, ¶ 7.)

C.    The Evidentiary Dispute

At the November 6, 2013 hearing, I requested that counsel for the parties submit a list of disputed and undisputed exhibits to enable the Court to better consider the Motion in Limine. Pursuant to the Court's request, the parties submitted a List of Joint Exhibits for Trial, to which there is no objection, as well as a List of Plaintiff's Exhibits for Trial, to which Debtor objects. (A.P. Dckt. 31.)

The List of Joint Exhibits for Trial includes:

(1)    Petition and Schedules in Chapter 7 Case of Ross Taylor, Case No. 11-60587;

(2)    Settlement Statement dated 12/11/08 from closing of sale of property at 627 Three Pond Road, Rocky Ford, Georgia;

(3)    Records and checks from Sea Island Bank relating to the distribution of $79,770.00; and

(4)    Records and checks relating[sic] from Sea Island Bank account of Taylor and Son Construction, LLC.

The List of Plaintiff's Exhibits for Trial ("Plaintiff's Exhibits") includes:

(5)     Transcript and/or audio recording of § 341 meeting of creditors in Case No. 11-60587;

(6)     Section 341 meeting report filed 11/14/11 by Chapter 7 Trustee by James C. Overstreet, Jr.;

(7)     Adversary Complaint filed by James C. Overstreet, Jr. against Taylor et al. (Adversary Proceeding No. 11-06023);

(8)     Time records of James C. Overstreet, Jr. and Jeffrey M. Harvey in connection with investigation and litigation of claims asserted in Adversary Proceeding No. 11-06023;

(9)     Docket from Chapter 11 bankruptcy case of Ross and Miriam Taylor filed in the Middle District of Florida, Case No. 3:08-bk-01861;

(10)    Monthly Operating Reports from said case, specifically the operating reports for December of 2008 and January of 2009;

(11)    Transcript and/or audio recording of examination of Ross Taylor by U.S. Trustee;

(12)    Transcript and/or audio recording of examination of Miriam Taylor by U.S. Trustee; and

(13)    Handwritten explanation prepared by representative of Sea Island Bank describing how $79,770 was expended by Ross and Amy Taylor.

In the sections below, the Court will address Debtor's Motion in Limine first as a whole and then separately as to each of the objected to exhibits (Plaintiff's Exhibits for Trial Numbers 5 through 13).

## DISCUSSION

A.    <u>General Rules Regarding Motions in Limine</u>

   The Supreme Court of the United States defines a motion in limine as "any motion, whether made before or during trial, to exclude anticipated prejudicial evidence before the evidence is actually offered." *Luce v. United States*, 469 U.S. 38, 40 n.2 (1984). This function of a motion in limine, to keep inadmissible evidence that is prejudicial from the trier of fact, is relatively less important in bench trials as opposed to jury trials because "judges routinely hear inadmissible evidence that they are presumed to ignore when making decisions." *Harris v. Rivera*, 454 U.S. 339, 346 (1981). As Judge Diehl noted in *Alliance Financial Capital, Inc. v. Herzfeld (In re Herzfeld)*:

> A motion in limine is a tool that is prevalent in criminal law practice and is also useful in civil jury trials. Its purpose may be to admit, exclude, or limit the evidence presented to the trier of fact. A motion in limine made in a case where the trial judge is the trier of fact essentially asks the court to pass on the admissibility of evidence before the evidence has been tendered in the context of the trial. Many courts have agreed that motions in limine should only be granted sparingly, noting that the "better practice is to deal with questions of admissibility of the evidence as they arise." *See, e.g., Sperberg v. Goodyear Tire & Rubber Co.*, 519 F. 2d 708, 712 (6th Cir. 1975). Indeed, a ruling on a motion in limine is interlocutory and therefore subject to reconsideration by the Court at trial so its value to the litigants in determining trials strategy is limited.

*Alliance Financial Capital, Inc. v. Herzfeld (In re Herzfeld)*, No. 05-05001, 2007 WL 7143395, at *1 (Bankr. N.D. Ga. Dec. 17, 2007).

   Rule 9017 of the Federal Rules of Bankruptcy Procedure makes the Federal Rules of Evidence applicable to bankruptcy cases, including this adversary proceeding.

Fed. R. Bankr. P. 9017.

B.     Scope of Debtor's Motion in Limine

The Court's scheduling order (A.P. dckt. 11) required the parties to exchange exhibits and mark them. Objections to the other party's proposed evidence had to be asserted at least seven days prior to the pretrial conference, which was scheduled for September 16, 2013. (A.P. dckt. 18.) Debtor timely filed his Motion in Limine on September 7, 2013, by which he asserted his objections to the U.S. Trustee's exhibits and related testimony. (A.P. dckt. 20.)

Debtor's motion identified four groups of exhibits or evidence that he sought to exclude, namely:

- Chapter 11 Case

- Documents Regarding Adversary Proceeding 11-06023

- Transcripts and/or Audio Recordings

- Hand written document by Sea Island Bank representative, Tax Returns, and Section 341 meeting report

As a preliminary matter, all of the allegedly prejudicial facts have already been revealed in the U.S. Trustee's complaint in this adversary proceeding and Debtor's Motion in Limine. The cat is out of the bag, so to speak. So, the issue in this case is not really whether the trier of fact would become prejudiced against Debtor by these alleged

facts, which are not very complicated: Debtor received funds from the sale of property which he had conveyed away; he then failed to reveal the receipt of those funds in his monthly operating reports as well as to disclose his convoluted disposition of the proceeds; and he later compounded the nondisclosure in the Georgia case. Rather, the issue is whether these facts are a relevant part of the proof that, when added to the other evidence, will allow the U.S. Trustee to carry his burden of proof on the issue of revocation. Many of the facts of the Florida case provide context for what occurred in the Georgia case.  There is an important difference between the admissibility of the evidence, which can be a matter of the trial court's discretion, and the legal sufficiency of the facts in the record to support revocation. Judge Dalis can assess whether any fraud in the Florida case can, as a matter of law, be grounds to revoke Debtor's discharge. Some of the evidence might be admitted for one purpose (i.e. to show what happened), but might not, when viewed in isolation, be a sufficient basis for revocation.

After thoughtful and thorough consideration of Debtor's concerns as well as the disputed exhibits, the Court finds that none of the disputed exhibits is capable of causing Judge Dalis to have unfair prejudice against Debtor at trial sufficient to merit the evidence's exclusion under Federal Rule of Evidence ("Rule") 403.

The admissibility of all exhibits will be subject to the parties laying a proper foundation at trial. In accord with the structure of Debtor's Motion in Limine, some

AO 72A
(Rev. 8/82)

exhibits will be considered together below.

A.     Docket Report and Monthly Operating Reports from the Florida Case (Plaintiff's Exhibits Numbers 9 and 10)

Debtor's motion in limine broadly asserts that "any events that occurred in the Chapter 11 and any documents from the chapter 11 are irrelevant to the case at hand." (Mot. in Limine, A.P. dckt. 20, at 2.). Counsel for Debtor raised concerns at the hearing on Debtor's Motion in Limine that admission of some of the disputed exhibits would be unfairly prejudicial because fraud committed in a prior case, Debtor argues, cannot alone be grounds for a revocation of discharge under § 727(d).

More specifically, Debtor moves to exclude the docket and two monthly operating reports filed in the Florida case (exhibits 9 and 10, respectively), contending that those documents "are irrelevant to the case at hand." (Mot. in Limine, A.P. dckt. 20, at 2.) In support of his argument, Debtor cites *Micoz v. Carter (In re Carter)*, 125 B.R. 631 (Bankr. D. Utah 1991), for the proposition that evidence of fraud by the debtor in a prior case must be excluded from evidence when a court is considering an objection to discharge in a subsequently filed case because § 727(a)(4), one of the grounds for denial of a debtor's discharge, only applies "'in or in connection with the case' in which Debtor received a discharge." (Mot. in Limine, A.P. dckt. 20, at 2.)

The Court reads *In re Carter*'s holding much narrower. In *In re Carter*, the

AO 72A
(Rev. 8/82)

bankruptcy court held that, under § 727(a)(4), "a false oath made by a debtor in one case which is ultimately dismissed is not grounds for denial of the debtor's discharge in a subsequently filed case." *In re Carter*, 125 B.R. at 634. As pointed out by the U.S. Trustee in his brief, *In re Carter* does not apply to the instant issue—the admissibility of evidence based on relevancy. (Pl.'s Resp., A.P. dckt. 27, at 2.)

Under Rule 401, "[e]vidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. According to the Pretrial Order (A.P. dckt. 17), the U.S. Trustee argues that Debtor's discharge should be revoked pursuant to § 727(d)(1) because Debtor was not entitled to receive a discharge in the first place under three subsections of § 727(a). Accordingly, to prevail at trial, the U.S. Trustee must prove that the elements of *one* of the following subsections are met:

- "[T]he debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case[.]" 11 U.S.C. § 727(a)(3).

- "[T]he debtor knowingly and fraudulently, in or in connection with the case . . . made a false oath or account[.] . . ." 11 U.S.C. § 727(a)(4)(A).

- "[T]he debtor has failed to explain satisfactorily, before determination of denial of discharge under this paragraph, any loss of assets or deficiency of assets to meet the debtor's liabilities[.]" 11 U.S.C. § 727(a)(5).

Therefore, evidence will be relevant in this case if it has any tendency to make a fact more or less probable that is of consequence to proving one or more elements of these

AO 72A
(Rev. 8/82)

three subsections.

In analyzing § 727(a)(4)(A), the United States Court of Appeals for the Eleventh Circuit has stated: "The subject matter of a false oath is 'material,' and thus sufficient to bar discharge, if it bears a relationship to the [debtor's] business transactions or estate, or concerns the discovery of assets, business dealings, or the existence and disposition of his property." *Chalik v. Moorefield (In re Chalik)*, 748 F.2d 616, 617–18 (11th Cir. 1984). Furthermore, "[f]raudulent intent may be inferred from all of the facts and circumstances of a case." *Walton v. Staub (In re Staub)*, 208 B.R. 602, 605 (Bankr. S.D. Ga. 1997) (Dalis, J.) (citing *Aetna Ins. Co. v. Nazarian (In re Nazarian)*, 18 B.R. 143, 146 (Bankr. D. Md. 1982); *see also Future Time, Inc. v. Yates*, 26 B.R. 1006, 1007 (M.D. Ga. 1983), *aff'd*, 712 F.2d 1417 (11th Cir. 1983)). Accordingly, the scope of what is relevant to the U.S. Trustee's claims appears to be exceedingly broad.

The U.S. Trustee argues that the docket and monthly operating reports are relevant because they show "a pattern of conduct"[7] where Debtor "knowingly lied on multiple occasions about not receiving any money from the sale of property in December of 2008," which bears on whether or not Debtor knowingly lied at the § 341 meeting of

---

[7] Other courts have used the phrase "course of conduct." *E.g., Jahn v. Hughes (In re Hughes)*, 490 B.R. 784, 792 (Bankr. E.D. Tenn. 2013) (citing *Clippard v. Jarrett (In re Jarrett)*, 417 B.R. 896, 903 (Bankr. W.D. Tenn. 2009)) ("With respect to the last element of fraudulent intent, circumstantial evidence of a debtor's course of conduct may be used to infer the debtor's intent.").

AO 72A
(Rev. 8/82)

creditors in the Georgia case. (Pl.'s Resp., A.P. dckt. 27, at 2.) The alleged fact that Debtor knowingly lied at the § 341 meeting of creditors is certainly "of consequence in determining the action." Fed. R. Evid. 401; *see also* 11 U.S.C. § 727(a)(4), (d)(1).

Upon the trial of the case, Judge Dalis may require more evidence to find a "pattern of conduct" but the docket (exhibit 9) and the two monthly operating reports (exhibit 10) need not be excluded in limine.  Moreover, Judge Dalis may find these exhibits relevant to any claim of mistake by Debtor with regard to his § 341 meeting of creditors testimony.

Putting aside for a moment these narrow questions of how certain evidence might be relevant to the issues in the case, the trier of fact is permitted to hear evidence and testimony surrounding all of the circumstances of the Florida case in order to give the court some *context* to the allegations of the complaint. By way of example, the court might want to hear testimony regarding one or more of the following: (1) Debtor's prior ownership of the real estate and his disposition of that interest; (2) the records that Debtor maintained or failed to maintain regarding that property; (3) Debtor's assertion in the statement of financial affairs ("SOFA") in the Florida case that he conveyed away his interest for no consideration; and (4) the reason Debtor failed to *amend* his SOFA during the Florida case after he did receive part of the sales proceeds. Arguably, the court could

take judicial notice of those proceedings which are a matter of public record.[8] Still, there is nothing like the exchange that takes place during a rigorous cross-examination to help the court assess the credibility of a witness.

Contrary to Debtor's view, it appears that almost *everything* that occurred in the Florida case relating to the 200-acre property and its sale might be relevant to the court's assessment of Debtor's testimony at his § 341 meeting of creditors in the Georgia case. Debtor may even want to present evidence from the Florida case, such as the fact that he disclosed his prior ownership and subsequent transfer of the 200 acres for no value, which is consistent with his statement to the Chapter 7 Trustee in the Georgia case that he did not receive any money from the sale of the 200 acres. Accordingly, Debtor's Motion in Limine as to Plaintiff's Exhibits Numbers 9 and 10 is DENIED.

B.    Adversary Complaint and Related Trustee Time Records (Plaintiff's Exhibits Numbers 7 and 8)

Next, Debtor moves to exclude the complaint filed by James C. Overstreet, Jr., the chapter 7 trustee (**"Chapter 7 Trustee"**), against Debtor's brother and father in Adversary Proceeding Number 11-06023 (exhibit 7), as well as the time records kept by the Chapter 7 Trustee and Jeffrey M. Harvey in connection with the adversary proceeding (exhibit 8), arguing that the exhibits are not relevant under Rule 401. The U.S. Trustee argues that this evidence is relevant to show that the Chapter 7 Trustee reasonably relied

---

[8] *See supra* note 3.

⌕AO 72A
(Rev. 8/82)

on Debtor's false statements at the § 341 meeting of creditors. (Pl.'s Resp., A.P. dckt. 27, at 4 & n.2.)

It is clear that the U.S. Trustee will call the Chapter 7 Trustee as one of his principal witnesses. For example, the Chapter 7 Trustee may be called upon to recount Debtor's denial of receiving proceeds from the sale of the 200 acres during his § 341 meeting of creditors testimony on November 2, 2011. Moreover, the Chapter 7 Trustee may be asked why he subsequently filed an adversary complaint against Debtor's father and one of Debtor's brothers instead of pursuing an objection to discharge action at that time. Again, these transactions provide context to the circumstances of Debtor's alleged false oath, and as the U.S. Trustee asserts, they may show whether or not the Chapter 7 Trustee relied on Debtor's testimony. The Chapter 7 Trustee's testimony, including his identification of his time records in the adversary proceeding, is relevant to the alleged fact that the discharge granted to Debtor on March 13, 2012 "was obtained through the fraud of the debtor." 11 U.S.C. § 727(d)(1). Simply put, it is a matter of timing. Therefore, Debtor's Motion in Limine as to Plaintiff's Exhibits Numbers 7 and 8 is DENIED.

C.    Transcripts and Audio Recordings of the § 341 Meeting of Creditors, the U.S. Trustee's Examination of Ross Taylor, and the U.S. Trustee's Examination of Miriam Taylor (Plaintiff's Exhibits Numbers 5, 11, and 12)

Debtor requests the Court to exclude as hearsay any transcripts and audio

recordings of the § 341 meeting of creditors in the Florida case (exhibit 5), as well as the separate examinations of Debtor and Miriam Taylor by the U.S. Trustee (exhibits 11 and 12, respectively), "unless the proper foundation is laid and they are otherwise admissible under the Federal Rules of Evidence."[9] (Mot. in Limine, A.P. dckt. 20, at 4.) In response, the U.S. Trustee argues that the transcripts and recordings are not hearsay for two reasons. First, the statements will be offered to prove what Debtor said and will not be offered for their truth. Second, many of the statements are Debtor's own statements and, therefore, are deemed not hearsay under Rule 801(d)(2)(A). (Pl.'s Resp., A.P. dckt. 27, at 4.)

The Court agrees that Debtor's own statements are not hearsay under Rule 801(d)(2)(A) and are admissible as a result, unless excluded on a different basis. The Court also notes that the Eleventh Circuit Court of Appeals has held that a bankruptcy court committed reversible error by not admitting a debtor's testimony at her § 341 meeting of creditors and during her Rule 2004 examination as substantive evidence. *Key Bank of Me. v. Jost (In re Jost)*, 136 F.3d 1455, 1459 (11th Cir. 1998). Regarding statements made by individuals other than Debtor at the § 341 meeting of creditors and Miriam Taylor's examination, Debtor has not identified which statements, if any, to

---

[9] In the U.S. Trustee's response to Debtor's Motion in Limine, he acknowledged that a foundation must be laid to admit the transcripts and audio recordings into evidence and requested that Debtor "forgo the formality" of requiring the a paralegal and certified court reporter from traveling to court to "provide non-substantive testimony about chain of custody and the transcription process. (Pl.'s Resp., A.P. dckt. 27, at 4.)

which he objects. As a result, the Court cannot rule on the admissibility of any of these statements in limine.  Any objections, hearsay or otherwise, to these statements will have to be made at trial. Therefore, Debtor's Motion in Limine as to Plaintiff's Exhibits Numbers 5, 11, and 12 is DENIED.

D.    Section 341 Meeting Report and Sea Island Representative's Handwritten Document (Plaintiff's Exhibits Numbers 6 and 13)

Finally, Debtor moves to exclude the § 341 Meeting Report filed by the Chapter 7 Trustee (exhibit 6), a one-page handwritten document made by a Sea Island Bank representative (exhibit 13), and some of Debtor's tax returns, urging the Court to find that the documents are hearsay and are, therefore, inadmissible into evidence. (Mot. in Limine, A.P. dckt. 20, at 4.)

In response, the U.S. Trustee claims that the § 341 Meeting Report is not hearsay because the report is being offered to show the effect of Debtor's false statements on the Chapter 7 Trustee and not to prove the truth of any statements in the document. "Hearsay is 'a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted.'" *United States v. Perl*, 492 F. App'x 37, 40 (11th Cir. 2012) (quoting Fed. R. Evid. 801(c)). A declarant is the person making the statement. *See* Fed. R. Evid. 801(b). Rule 801 provides, in relevant part, that a person's written assertion qualifies as a statement. *See* Fed. R. Evid. 801(a). The Chapter 7 Trustee prepared the report and is the declarant. The assertion (if it even

qualifies as such) is the Chapter 7 Trustee's statement that there was a "[p]ossible [§] 548 claim." The U.S. Trustee's theory of the case appears to be in part that Debtor made false statements to the Chapter 7 Trustee that resulted in the Chapter 7 Trustee pursuing a fraudulent transfer action against Debtor's father and brother instead of discovering the Debtor's allegedly fraudulent activities before Debtor received a discharge. Therefore, the Court finds that the report is not being offered for the truth of the matter asserted and is not hearsay as a result. Debtor's Motion in Limine as to Plaintiff's Exhibits Number 6 is DENIED.

The U.S. Trustee admits in his response to the Motion in Limine that the handwritten document made by a Sea Island representative is hearsay. (*See* Pl.'s Resp., A.P. dckt. 27, at 4 ("Plaintiff U.S. Trustee agrees that the document, in and of itself, may be hearsay.").) Therefore, Debtor's Motion in Limine as to Plaintiff's Exhibits Number 13 is GRANTED.[10] As pointed out by the U.S. Trustee, however, the Court finds that the testimony may be used at trial for other purposes such as to refresh the Sea Island representative's recollection if the representative testifies at trial.

---

[10] It remains to be seen if an exception to the hearsay rule, such as the business records exception, applies to the handwritten note. *See* Fed. R. Evid. 803(6) (providing that "[a] record of an act, event, condition, opinion, or diagnosis" is not excluded by the hearsay rule "if: (A) the record was made at or near the time by—or from information transmitted by—someone with knowledge; (B) the record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit; (C) making the record was a regular practice of that activity; [and] (D) all these conditions are shown by the testimony of the custodian or another qualified witness . . .").

Although not included in the List of Plaintiff's Exhibits for Trial submitted to the Court on November 15, 2013, Debtor moves to exclude his own tax returns as hearsay. (Mot. in Limine, A.P. dckt. 20, at 4; A.P. dckt. 31.) The Court finds that Debtor's hearsay argument must fail because all statements of the Debtor in his tax returns are deemed not hearsay under Rule 801(d)(2)(A). As a result, Debtor's Motion in Limine regarding the exclusion of Debtor's tax returns is DENIED.

## CONCLUSION

These rulings are, by definition, both preliminary and advisory. *Luce*, 469 U.S. at 41–42 ("The ruling [on a motion in limine] is subject to change when the case unfolds, particularly if the actual testimony differs from what was contained in the defendant's proffer. Indeed even if nothing unexpected happens at trial, the district judge is free, in the exercise of sound judicial discretion, to alter a previous *in limine* ruling."); *see also Grace Indus., Inc. v. N.Y. State Dep't of Transp. (In re GII Indus, Inc.)*, 495 B.R. 209, 211 (Bankr. E.D.N.Y. 2010) (finding that a court should grant a motion in limine "only when the evidence is clearly inadmissible on all possible grounds"). As a result, Judge Dalis has the power to change any of the Court's rulings on these exhibits at trial.

## O R D E R

Pursuant to the foregoing conclusions, this Court hereby issues the following ORDERS.

The admissibility of Plaintiff's Exhibits Numbers 5 through 13 is subject to the Plaintiff laying a proper foundation at trial.

Debtor's Motion in Limine is DENIED as to Plaintiff's Exhibit Numbers 5, 6, 7, 8, 9, 10, 11, and 12, as well as regarding the exclusion of Debtor's tax returns.

Debtor's Motion in Limine is GRANTED as to Plaintiff's Exhibit Number 13, provided that the U.S. Trustee may be able to use the document for non-substantive purposes.

Dated at Savannah, Georgia, this 31st day of March, 2014.

Edward J. Coleman, III
United States Bankruptcy Judge